UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALAN ARCHER,

                              Plaintiff,

               -against-

TNT USA Inc.,

                              Defendant.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**

12-CV-1297 (SLT)(RML)

**TOWNES, United States District Judge:**

   In a Memorandum and Order dated January 24, 2013, and entered January 28, 2013 (the "Prior M&O"), this Court declined to "so order" a Stipulation of Dismissal which would have dismissed this action with prejudice; directed that the stipulation be stricken; and directed that the parties submit additional documentation if they wished to dismiss this action with prejudice. Plaintiff now moves for reconsideration of the Prior M&O, principally relying on a Fifth Circuit case for the proposition that judicial approval of settlements of claims under the Fair Labor Standards Act is not required. For the reasons set forth below, plaintiff's motion is denied.

*BACKGROUND*

   In March 2012, plaintiff Alan Archer, a former employee of defendant TNT USA, Inc., commenced this action pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), alleging, *inter alia,* that he had not been paid overtime compensation for a period of years. On January 18, 2013, plaintiff's counsel informed Magistrate Judge Levy that the parties had "reached a settlement of this action." Letter to Hon. Robert Levy, USMJ, from Abdul K. Hassan. Esq., dated Jan. 18, 2013. On January 22, 2013, at the direction of Judge Levy, the parties filed a proposed "Stipulation and Order Dismissing the Complaint against TNT

USA Inc. with Prejudice Pursuant to Rule 41 of the Federal Rules of Civil Procedure" (the "Stipulation") for this Court to "so order."

This Court declined to "so order" the Stipulation. Relying on district court opinions from this Circuit, this Court held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." Prior M&O at 2 (quoting *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 644 (S.D.N.Y. 2011), and *Manning v. New York Univ.*, No. 98 Civ. 3300 (NRB), 2001 WL 963982, at *13 (S.D.N.Y. Aug. 22, 2001)). First, this Court noted that 29 U.S.C. § 216(c) expressly authorizes the Secretary of Labor "to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees . . . ." *Id.* Second, this Court quoted *Joo* and *Manning*, *supra*, for the proposition that "when employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* (quoting *Joo*, 763 F. Supp. 2d at 644; *Manning*, 2001 WL 963982, at *13). This Court noted that while the parties were tacitly requesting Court approval of their settlement, they had not "provided the Court with a copy of the Settlement Agreement or with a memorandum explaining why the settlement is fair." *Id.* Accordingly, this Court directed that the Stipulation be stricken and that the parties "submit, at a minimum, (1) a copy of the Settlement Agreement and (2) a joint memorandum of law explaining why the proposed settlement is fair and should be approved." *Id.*

***The Instant Motion for Reconsideration***

Plaintiff now moves for reconsideration of the Prior M&O. In a two-page letter dated January 28, 2013 (the "Reconsideration Request"), plaintiff principally argues that "the FLSA in fact does not require court approval" of settlements. Reconsideration Request at 1. The

Reconsideration Request tacitly acknowledges that some district courts have taken the position that court approval is required to settle an FLSA case, but asserts that these courts have "confused the ability to use a settlement as an affirmative defense in a subsequent case . . . with the ability of the parties to settle an FLSA case without court approval in the first place . . . ." *Id.* at 1-2. Plaintiff also implies that these district courts are expressing a minority view, stating, "Based on my experience of actively litigating FLSA cases for over a decade, more than 95 percent of FLSA settlements in this Court have never been approved by the Court." *Id.* at 2.

The Reconsideration Request does not cite to any cases from this Circuit in support of these arguments. Indeed, the only case which plaintiff cites in his Reconsideration Request is *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247 (5th Cir.), *cert. denied*, 133 S. Ct. 795 (2012), which plaintiff reads as taking "the position that court approval was not required." Reconsideration Request at 2. While the Reconsideration Request cites to, and attaches, a brief which plaintiff's counsel submitted to the Second Circuit in another case, *Cabrera v. Nassau Medical Services, P.C.*, in which counsel attempted to raise the issue of whether parties can settle FLSA claims without court approval, that brief itself cites to only five cases other than *Martin*: two out-of-Circuit cases, one district court case from the United States District Court for the Southern District of New York, and two Supreme Court cases—*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 (1946).

After arguing that the FLSA does not require Court approval of settlements, plaintiff ends his Reconsideration Request by suggesting that it is not necessary to resolve this issue. Specifically, plaintiff states:

> [T]he parties are not seeking court approval of the FLSA settlement—this is why only a stipulation of dismissal was filed with the Court. While courts generally so-order stipulations of discontinuance and while defendants generally expect such so-

3

> ordering, a stipulation of dismissal signed by all parties results in a
> dismissal of the case without the need for a court order or so-
> ordering. See FRCP 41(a)(1)(A)(ii). This is not a case involving
> an infant or class action that would otherwise require court
> approval for different reasons.

Reconsideration Request at 2. Plaintiff nonetheless seeks a decision on the issue of whether

court approval of a settlement is necessary, noting that this is "an issue that transcends this case"

and needs to be clarified "for the benefit of the court, the bar and the public." *Id.*

## DISCUSSION

### *The Legal Standard*

The determination of whether to "grant or deny a motion for reconsideration lies squarely

within the discretion of the district court." *Murphy v. First Reliance Standard Life Ins. Co.*, No.

08-CV-3603 (DRH)(WDW), 2010 WL 2243356, at *3 (E.D.N.Y. June 1, 2010). However, a

motion for reconsideration "is generally not favored and is properly granted only upon a showing

of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004).

"[R]econsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked . . . that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.

1995); *see* Local Civ. R. 6.3. Moreover, a motion for reconsideration is not a vehicle for a

"moving party seek[ing] solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257

(alterations added); *see also Nussbaum v. Spider, Inc.,* No. 09-CV-2025 (JS)(ETB), 2009 WL

3756668, at *1 (E.D.N.Y. Oct. 30, 2009) (citing *United States v. Gross*, No. 98-CR-0159, 2002

WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an

opportunity to reargue the same points raised previously."). Accordingly, parties may not

advance "new arguments or issues that could have been raised on the original motion." *Kalamas*

*v. Consumer Solutions REO, LLC*, No. 09-CV-5045 (SJF), 2011 WL 6026303, at *1 (E.D.N.Y. Nov. 30, 2011) (citing *Corines v. Am. Physicians Ins. Trust*, 769 F. Supp. 2d 584, 593-94 (S.D.N.Y. 2011)).

In this case, plaintiff's Reconsideration Request itself does not cite to any "controlling decisions" which this Court might have overlooked. The only decision cited in the Reconsideration Request itself is *Martin v. Spring Break '83 Productions, L.L.C.*, *supra*, a Fifth Circuit decision. Decisions from outside the Second Circuit are not controlling on this Court. *See*, *e.g.*, *Shub v. Westchester Cmty. Coll.*, No. 06 Civ. 8324 (WCC), 2008 WL 1957731, at *4 n. 2 (S.D.N.Y. Apr. 28, 2008) ("Circuit decisions outside the Second Circuit are not controlling law and need not be considered on a motion for reconsideration.")

In addition, four of the six cases cited in plaintiff's brief in *Cabrera v. Nassau Medical Services, P.C.*, which is incorporated by reference in the Reconsideration Request, are not controlling. Two of the six cases—*Martin v. Spring Break '83 Productions, L.L.C.*, *supra*, and *Lynn's Food Stores, Inc. v. U.S. Department of Labor*, 679 F.2d 1350 (11th Cir. 1982)—are Circuit decisions from outside of the Second Circuit. Two other cases—*Sampaio v. Boulder Rock Creek Developers, Inc.*, No. CV-07-153 (ETB), 2007 WL 5209390 (E.D.N.Y. Sept. 6, 2007), and *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010)—are district court decisions, which are also not controlling on this Court. *See Ades v. Deloitte & Touche*, 843 F.Supp. 888, 892 (S.D.N.Y. 1994) (decisions of other district courts not controlling).

The two remaining cases—*Brooklyn Savings Bank v. O'Neil*, *supra*, and *D.A. Schulte, Inc. v. Gangi*, *supra*—do not support plaintiff's claim that the FLSA does not require Court approval of settlements. In *O'Neil*, the Supreme Court consolidated appeals in three separate cases relating to the interpretation of Section 16(b) of the FLSA, 29 U.S.C. § 216(b): *Brooklyn*

*Savings Bank v. O'Neil*, *Dize v. Maddrix*, and *Arsenal Building Corporation v. Greenberg*.  The first two cases raised the question of "whether an employee subject to the terms of the Act can waive or release his right to receive from his employer liquidated damages under Section 16(b)." *O'Neil*, 324 U.S. at 698.  The third case raised the issue of "whether in a suit brought pursuant to the provisions of Section 16(b) the employee is entitled to interest on sums recovered as wages and liquidated damages under that section." *Id.*  Since the latter issue is not germane to this case, the following discussion focuses solely on the first two cases.

**Brooklyn Savings Bank v. O'Neil**

In *O'Neil*, a bank became aware in 1942 that a night watchman, who was employed for a two-year period ending in 1940, was entitled to overtime compensation under section 7 of the FLSA, 29 U.S.C. § 207.  The bank calculated the statutory overtime compensation, and offered its former employee a check for that amount in return for a release of all the employee's rights under the FLSA.  Although the employee signed the release, he subsequently sued in state court to recover the liquidated damages provided for in Section 16(b).  After the state courts ruled that he was entitled to the liquidated damages, the Supreme Court granted certiorari on the question of whether the release was "a defense to an action subsequently brought solely to recover liquidated damages." *O'Neil*, 324 U.S. at 701.

Before addressing this question, however, the Supreme Court raised another, "preliminary question" of whether the release "was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages." *Id*. at 703.  The Court recognized that this was a factual question which the state courts had not addressed, but undertook to examine the evidence itself "for the purpose of determining what facts reasonably might be and

presumably would be found therefrom by the state court." *Id.* After concluding that the record showed "that the release was not given in settlement of a bona fide dispute between employer and employee," *id.*, the Supreme Court recast the question presented as follows: "whether in the absence of a bona fide dispute between the parties as to liability, respondent's written waiver of his right to liquidated damages under Section 16(b) bars a subsequent action to recover liquidated damages." *Id.* at 704.

The Court answered this question in the negative. It began by noting that it had previously held that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Id.* (citing *Midstate Horticultural Co. v. Pennsylvania R.R. Co.*, 320 U.S. 356, 361 (1943), and *A.J. Phillips Co. v. Grand Trunk Western Ry.*, 236 U.S. 662, 667 (1915)). Since Congress had not specifically considered the waiver issue, the Supreme Court found it "necessary to resort to a broader consideration of the legislative policy behind this provision as evidenced by its legislative history and the provisions in and structure of the Act." *Id.* at 706.

After considering the legislative history behind the FLSA, the Supreme Court concluded that "Congress did not intend that an employee should be allowed to waive his right to liquidated damages." *Id.* The Court stated:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the

right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

*Id*. at 706-07.

The Court further noted that the right of action contained in section 16(b) not only served to vindicate private rights, but also served as the FLSA's primary enforcement mechanism. The Court reasoned that the liquidated damages provision had an important deterrent effect, since an employer who unsuccessfully gambled on evading the FLSA's provisions would be "liable for payment not only of the basic minimum originally due but also damages equal to the sum left unpaid." *Id.* at 709. The Court explained:

> To permit an employer to secure a release from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that Section 16(b) should have. Knowledge on the part of the employer that he cannot escape liability for liquidated damages by taking advantage of the needs of his employees tends to insure compliance in the first place. To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy.

*Id.* at 709-10.

### Dize v. Maddrix

While the Supreme Court stopped short of expressly holding that agreements to waive liquidated damages were void, it held in *Dize v. Maddrix* that the agreements to waive the minimum wage provisions of the FLSA were "absolutely void." In *Maddrix*, an employer failed to pay its employees time and a half for overtime until 1942, when the Wage and Hour Administration obtained an injunction prohibiting it from continuing to violate the FLSA.

Thereafter, the employer offered a former employee $500—a sum which both the employer and employee knew to be less than the amount due to the employee for the statutorily mandated minimum wages and overtime pay—in exchange for a release of all the employee's claims under the FLSA. The employee then brought suit in the United States District Court for the District of Maryland, seeking to recover both the balance of the statutory wages due and liquidated damages. Although the employer argued that the employee had released him of liability, the district court rejected this argument, relying on *Guess v. Montague*, 140 F.2d 500 (4th Cir. 1943), which held invalid a settlement agreement in which employees agreed to accept less than the statutory minimum wage. *Maddrix v. Dize*, 7 Wage Hour Rep. 313 (Jan. 31, 1944). The Fourth Circuit affirmed and the Supreme Court granted certiorari on the question of whether there had been a compromise of the employee's claims.

In answering this question in the negative, the Court focused on the fact that both the employer and the employee "knew more than $500.00 was due" under the FLSA's minimum wage and overtime provisions at the time the release was executed. 324 U.S. at 713. The Supreme Court found that the employer and employee had "attempted by means of that release to waive the right to the basic statutory minimum as well as the right to liquidated damages." *Id*. The Court unequivocally held that "[t]his attempted release and waiver of rights under the Act was absolutely void." *Id*. at 713-14.

The Supreme Court left open the possibility that an employer and employee might agree to settle a "bona fide dispute." The Court noted that neither *O'Neil* nor *Maddrix* had presented this issue, stating that neither case "necessitated a determination of what limitation, if any, Section 16(b) of the Act places on the validity of agreements between an employer and employee

to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." *Id*. at 714.

**D.A. Schulte, Inc. v. Gangi**

A year later, the Supreme Court addressed this open question in *D.A. Schulte, Inc. v. Gangi*, *supra*. In that case, Gangi and other building service and maintenance workers employed by D.A. Schulte, Inc., had worked varying hours of overtime during the four-year period between the effective date of the FLSA and June 1, 1942—the date of the Supreme Court's decision in *Kirschbaum v. Walling*, 316 U.S. 517 (1942). After *Kirschbaum* made clear that service and maintenance employees in buildings tenanted by manufacturers producing for interstate commerce were covered under the FLSA, Gangi and his fellow employees demanded overtime wages and liquidated damages. However, their employer refused to pay, asserting that "its tenants did not ship the products they produced directly in interstate commerce but delivered them to distributors or producers in the same state who thereafter used the products of petitioner's tenants for interstate commerce or the production of goods for that commerce." *D.A. Schulte*, 329 U.S. at 111.

Although D.A. Schulte's assertions were "admittedly true," *id*., D.A. Schulte elected to settle rather than litigate the legal question of whether it was required to comply with the FLSA. It calculated the overtime compensation due to the employees and paid that amount to the employees in exchange for a release. Although the employees did not dispute their employer's calculation of the overtime owed, they subsequently sued the employer for liquidated damages in the United States District Court for the Southern District of New York.

The district court held that the release was valid and dismissed the action. In a decision which pre-dated the Supreme Court's decision in *O'Neil*, the district court found that there was a

"genuine dispute," which the parties had resolved through an "arm's length" negotiation. *Gangi v. D.A. Schulte, Inc.*, 53 F.Supp. 844, 846 (S.D.N.Y. 1943). The district court distinguished *Guess v. Montague*, *supra*—the Fourth Circuit case which held invalid a settlement agreement in which employees agreed to accept less than the statutory minimum wage—by noting that the amount paid in settlement was at least equal to the unpaid overtime compensation. *Id.*

On appeal, the Second Circuit reversed. *See Gangi v. D.A. Schulte, Inc.*, 150 F.2d 694 (2d Cir. 1945). The Court of Appeals principally relied on *O'Neil*, which the Supreme Court had decided two months earlier. However, because the district court found that a bona fide dispute existed, the Second Circuit had to address the question left open in *O'Neil*. The Second Circuit resolved that question by relying on its own precedents: *Fleming v. Post*, 146 F.2d 441 (2d Cir. 1945), and *Rigopoulos v. Kervan*, 140 F.2d 506 (2d Cir. 1943). The Second Circuit stated:

> [I]n *Fleming* ... , 146 F.2d [at] 443, where this court adopted the rule later approved in the O'Neil case that a release of liquidated damages was invalid, it went on to say definitely that 'we should reach the same result if there were here an accord and satisfaction.' And no other result would be in keeping with the policy and provisions of the Act. For as this court pointed out in *Rigopoulos* ... , 140 F.2d [at] 507, ... the employer's liability for unpaid overtime compensation and liquidated damages in an additional equal amount 'is a single and entire liability,' which 'is not discharged in toto by paying one-half of it.' That being so, it is certainly not discharged by the employer's mere assertion, no matter how vigorous, that he does not come within the Act. Otherwise employers would have available a simple method for avoiding 'the deterrent effect which Congress plainly intended that Section 16(b) should have.' *Brooklyn Sav. Bank* ... , 65 S.Ct. [at] 903.

*Gangi*, 150 F.2d at 696 (alterations added).

The Supreme Court granted certiorari and affirmed the Second Circuit, although on slightly different grounds. The Supreme Court found it "not ... necessary to determine whether the liability for unpaid wages and liquidated damages that Section 16(b) creates is unitary or

divisible." *Gangi*, 329 U.S. at 114. Rather, the Court relied on the reasons which had led the Court "to condemn the waivers of liquidated damages in the O'Neil case." *Id.* The Court stated:

> [T]he purpose of the Act, which we repeat from the O'Neil case was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise [o]f controversies over coverage. Such a compromise thwarts the public policy of minimum wages, promptly paid, embodied in the Wage-Hour Act, by reducing the sum selected by Congress as proper compensation for withholding wages.

*Id.* at 116 (alternations added, citations omitted). The Court acknowledged that "the liquidated damage provision acts harshly upon employers whose violations are not deliberate but arise from uncertainties or mistakes as to coverage," *id.* at 115, but opined:

> Congress evidently felt it should not provide for variable compensation to fit the degree of blame in each infraction. Instead Congress adopted a mandatory requirement that the employer pay a sum in liquidated damages equal to the unpaid wages so as to compensate the injured employee for the retention of his pay.

*Id.* at 115-16.

Although the Supreme Court held that the "remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage," *id.* at 114, it expressly declined to consider "the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Id.* at 114-15. In addition, the Supreme Court suggested, in a lengthy footnote, that such compromises might be possible in the context of litigation which resulted in a "stipulated judgment" that was submitted to "judicial scrutiny." *Id.* at 113, n. 8. That footnote (hereafter, "Footnote 8") responded to one of D.A. Schulte's arguments, which pointed out that the Supreme Court itself had authorized a

settlement of a suit for unpaid minimum wages and overtime compensation in *North Shore Corporation v. Barnett*, 323 U.S. 679 (1944).  The Court distinguished *Barnett* by stating:

> Even though stipulated judgments may be obtained, where settlements are proposed in controversies between employers and employees over violations of the Act, by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties. At any rate the suggestion of petitioner is argumentative only as no judgment was entered in this case.

*Gangi*, 329 U.S. at 113, n. 8.

### *Developments following* **Gangi**

In reaction to *Gangi* and other Supreme Court cases establishing employer liability for so-called "portal-to-portal" activities,[1] Congress passed the Portal-to-Portal Act of 1947 which expressly provided, *inter alia*, that employees could waive certain rights under the FLSA. Section 3 of the Act, which was codified as 29 U.S.C. § 253, provides:

> Any cause of action under the [FLSA] ... which accrued prior to May 14, 1947, or any action (whether instituted prior to or on or after May 14, 1947) to enforce such a cause of action, may hereafter be compromised in whole or in part, if there exists a bona fide dispute as to the amount payable by the employer to his employee; except that no such action or cause of action may be so compromised to the extent that such compromise is based on an hourly wage rate less than the minimum required under such Act, or on a payment for overtime at a rate less than one and one-half times such minimum hourly wage rate.

---

[1] *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944); *Jewell Ridge Coal Corp. v. Local No. 6167, UMW*, 325 U.S. 161 (1945); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

29 U.S.C. § 253(a) (alterations added).  The legislation further provided that an employee could waive his right to liquidated damages, 29 U.S.C. § 253(b), and that "[a]ny such compromise or waiver, in the absence of fraud or duress, shall, according to the terms thereof, be a complete satisfaction of such cause of action and a complete bar to any action based on such cause of action."  29 U.S.C. § 253(c).

In 1949, Congress, citing a post-1945 decline in voluntary restitution by employers, *see* S. Rep. No. 81-640 (1949), passed legislation which authorized the Department of Labor ("DOL") to supervise settlements of claims for unpaid minimum wages and overtime compensation.  The legislation added a section 16(c) to the FLSA, which provided, *inter alia*:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

28 U.S.C. § 216(c).

Courts have disagreed as to how to construe this legislation.  Some courts have interpreted 29 U.S.C. § 253 as applying only to actions which "accrued prior to May 14, 1947," the date the Portal-to-Portal Act became effective.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 7 (11th Cir. 1982).  Other courts have assumed that § 253 was intended to abrogate *O'Neil* and *Gangi* and have applied the statute without restriction.  *See United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 862 (5th Cir. 1975).  Similarly, the question of "[w]hether Congress intended section 16(c) to be the exclusive manner by which to settle claims

does not have a clear answer." *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 626 (W.D. Tex. 2005). For purposes of the memorandum and order, this Court need not resolve these questions. Rather, this Court will focus solely on those decisions which have recognized the validity of settlements not supervised by the DOL.

As early as April 1947, courts were interpreting Footnote 8 and/or the *Gangi* Court's refusal to foreclose the "possibility of compromises" in cases involving bona fide disputes over hours and rates as authorizing judicially approved settlements of FLSA claims. In *Bracey v. Luray*, 161 F.2d 128 (4th Cir. 1947), the Fourth Circuit addressed a case in which employees secured final judgments in a United States district court which directed their employer to pay them approximately $5,800 in overtime pay and liquidated damages, but subsequently agreed to accept installment payments totaling only about $5,400 in satisfaction of the judgments. That agreement provided, *inter alia*, that if the employer defaulted on any one of the installment payments, the agreement would immediately become null and void and the judgments would become due and payable. After paying approximately four-fifths of the amount due under the agreement, the employer was late on some payments. Although the employer paid the entire $5,400 within four months of the deadline imposed by the agreement, the employees nonetheless took steps to collect on their judgments.

The employer brought an action in the district court, seeking to enjoin this collection activity on the ground that the agreement released him from liability. Relying on *O'Neil* and *Gangi*, the employees argued that the agreement with the employer was invalid. The Fourth Circuit rejected the employees' argument. After reading Footnote 8 as at least implying that the rule set forth in *Gangi* would not apply to stipulated judgments, the Fourth Circuit stated:

> In our case, the judgment was not stipulated but was entered in
> favor of the employees after a full hearing, including a reference to
> a Special Master. Such a judgment, we think, makes out an even
> stronger case in favor of the validity of a compromise than does a
> stipulated judgment.

*Bracey*, 161 F.2d at 130.

Similarly, in *Urbino v. Puerto Rico Ry. Light & Power Co.*, 164 F.2d 12 (1st Cir. 1947),

the First Circuit addressed the question of "whether a consent decree entered in an action

brought under Sec. 16(b) of the Fair Labor Standards Act, in which action it[ ] was stipulated

that there existed a bona fide dispute both as to coverage and as to amount due, whereby the

plaintiffs, in accordance with their agreement with the defendant, were awarded unpaid

minimum wages and overtime, but not liquidated damages, constitutes an effective bar to a

subsequent action between the same parties for liquidated damages only."  164 F.2d at 13

(alterations added).  Relying on that portion of *Gangi* in which the Supreme Court refused to

foreclose the "possibility of compromises" in cases involving bona fide disputes over hours and

rates, the First Circuit answered this question in the affirmative.  The Court acknowledged that

this portion of *Gangi* was "dictum" and "not even a categorical statement," but held that it:

> indicates clearly that the Supreme Court when it decided [*Gangi*]
> ... was not prepared to go so far as to close the door completely and
> finally on the possibility of settling genuine disputes arising under
> the Fair Labor Standards Act short of payment in full of minimum
> wages, overtime compensation and liquidated damages, thereby in
> effect forcing employees to take the risks however great and
> submit to the delays however long involved in litigating every
> honestly disputed question which might arise under the Act. It
> seems to us instead that the Supreme Court in [*Gangi*] ... must
> have meant to indicate that it was disposed to permit employees, at
> least when acting as free agents honestly and fairly advised, and
> when paid minimum wages and overtime compensation in full, to
> settle such genuine disputes with their employers as may arise
> under the Act by foregoing liquidated damages in whole or in part
> *provided such settlement receives the judicial approval implicit in*
> *the entry of a consent judgment.*

164 F.2d at 14 (alterations added) (emphasis added).

The rationale for requiring judicial approval of these settlements was cogently explained in *Walton v. United Consumers Club, Inc*., 786 F.2d 303 (7ᵗʰ Cir. 1986). As the Seventh Circuit stated:

> Ordinarily there would be no need for a statute allowing settlement of a dispute between employer and employees—people may resolve their own affairs, and an accord and satisfaction bars a later suit. Yet the Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages. Courts therefore have refused to enforce wholly private settlements. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

786 F.2d at 306.

### *Cases following* **Lynn's Food Stores**

While this Court finds the Seventh Circuit's reasoning persuasive, the last sentence of the passage quoted above is no longer entirely true. To be sure, the Eleventh Circuit has long held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Nall v. Mal-Motels, Inc*., 723 F.3d 1304, 1306 (11ᵗʰ Cir. 2013) (quoting *Lynn's Food Stores*, 679 F.2d at 1352). The first is under supervision of the Department of Labor, as expressly authorized by 29 U.S.C. § 216(c). According to the Eleventh Circuit, "[t]he only other route for compromise of FLSA claims[,] is provided in the context of suits brought directly by employees against their employer ... to recover back wages for FLSA violations." *Lynn's Food Stores*, 679 F.2d at 1353 (alterations added). "In those lawsuits, the parties may 'present to the district court a proposed settlement' and 'the district court may enter

a stipulated judgment after scrutinizing the settlement for fairness.'" *Nall*, 723 F.3d at 1306 (quoting *Lynn's Food Stores*, 679 F.2d at 1353).

Many district courts around the country, including many courts in this Circuit, have reached this same conclusion. For example, in *Sampaio v. Boulder Rock Creek Developers, Inc.*, *supra*—one of the cases cited by plaintiff in his brief in *Cabrera*—Magistrate Judge Boyle stated, "Under the FLSA, employees are not permitted to waive claims for unpaid wages or overtime, for less than statutory damages, with two exceptions: (1) where the settlement is supervised by the Secretary of Labor, and (2) in cases of 'judicially-approved stipulated settlements.'" *Id.* at *1. Similarly, District Judge Furman of the Southern District of New York has stated that "an employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citing *Mosquera v. Masada Auto Sales, Ltd.*, 09-CV-4925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011)).

This Court has neither the time nor the inclination to list all the cases from this Circuit which have reached the same conclusion as Judges Boyle and Furman. However, this Court notes that Judge Seybert of this Court has opined that "[i]t is well settled in this Circuit that judicial approval of ... FLSA settlements is required." *Peralta v. Soundview at Glen Cove, Inc.*, No. 11-CV-0867 (JS)(AKT), 2013 WL 2147792, at *1 (E.D.N.Y. May 16, 2013); *Files v. Federated Payment Sys. USA, Inc.*, No. 11-CV-3437 (JS)(GRB), 2013 WL 1874602, at *1 (E.D.N.Y. Apr. 2, 2013) (citing cases). While plaintiff asserts that "95 percent of FLSA settlements in this Court have never been approved by the Court," Reconsideration Request at 2,

that assertion is based entirely on his own experience. Plaintiff does not cite to any opinions

expressing this view.[2]

### *Martin v. Spring Break '83 Productions, L.L.C.*

In 2012, however, the Fifth Circuit held that wholly private settlements of FLSA claims

are permissible under some circumstances. *See Martin v. Spring Break '83 Productions, L.L.C.*,

*supra*. At first blush, *Martin* might appear to be a radical departure from *Lynn's Food Stores*

and the cases discussed above. Yet, when examined in detail, *Martin* is actually largely

consistent with these cases.

In *Martin*, unionized technicians employed by a movie or video production company,

Spring Break Louisiana, filed a grievance with their union, complaining that they had not been

---

[2] This court is aware that Judge Cogan of this Court recently held that an employee's acceptance of employer's offer of judgment, along with a notice of voluntary dismissal, may be sufficient to resolve an employee's FLSA claim. *Picerni v. Bilingual Seit & Preschool Inc*., 925 F. Supp. 2d 368 (E.D.N.Y. 2013). In light of this decision, Judge Furman has expressed a willingness to reconsider his influential opinion—*Wolinsky v. Scholastic, Inc.*, *supra*—which held that court approval of FLSA settlements is required. *See Lima v. Hatsuhana of USA, Inc*., No. 13 Civ. 3389 (JMF), 2014 WL 177412, at *2 (S.D.N.Y. Jan. 16, 2014). However, to date, no reported opinion has endorsed Judge Cogan's position. To the contrary, one judge in this district has expressly rejected his position, *Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 40 (E.D.N.Y. 2014), while two others have continued to require court approval for settlements of FLSA actions, while acknowledging that *Picerni* may hold the contrary. *Montoya v. Russo Bros. Serv. Ctr., Inc*., No. 10-CV-4625 (JS)(ARL), 2014 WL 112377, at *1 (E.D.N.Y. Jan. 10, 2014); *Serebryakov v. Golden Touch Transp. of N.Y., Inc*., No. 12-CV-3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. July 2, 2013).

The Second Circuit, which held that it lacked jurisdiction to decide the issue plaintiff's counsel raised in *Cabrera*, *see Cabrera v. Nassau Med. Servs., P.C.*, 526 F. App'x 12 (2d Cir. 2013) (summary order), has not addressed this issue. Although one court has cited *Cabrera* for the proposition that the law as to whether judicial settlements are required is "unsettled," *Rahman v. Kaplan Cornelia, Inc*., No. 12-CV-09095 (SN), 2014 WL 541851, at *7 (S.D.N.Y. Feb. 11, 2014), this is neither an accurate assessment of the current state of the law nor a correct characterization of *Cabrera*. In fact, *Cabrera* stated only that "there *may* be a general continuing controversy regarding whether parties may settle claims brought under the FLSA without court approval." *Cabrera*, 526 F. App'x at 14 (emphasis added).

paid for work they performed.  The union investigated their claims, but concluded that it would

be impossible to determine whether the technicians had actually worked on the days they alleged

they had worked.  Accordingly, the union negotiated a Settlement Agreement with the

production company to resolve the dispute over hours.

Before the union representative signed the Settlement Agreement, the technicians

brought an FLSA action against the production company and others in a California state court.

After that case was removed to federal court and transferred to the United States District Court

for the Eastern District of Louisiana, the defendants moved for summary judgment on the

ground, *inter alia*, that the Settlement Agreement was a valid release of the plaintiff's FLSA

claims.  The district court granted the defendants' motion for summary judgment, finding that

"the Settlement Agreement resolved a bona fide dispute over the number of hours Plaintiffs

worked."  *Martin v. Spring Break 83 Production, LLC*, 797 F. Supp. 2d 719, 731 (E.D. La.

2011).

In so ruling, the district court relied on *Martinez v. Bohls Bearing Equipment Co.*, 361 F.

Supp. 2d 608 (W.D.Tex. 2005), a case in which District Judge Rodriguez of the Western District

of Texas engaged in a thorough analysis of the history of the FLSA and concluded:

> [P]arties may reach private compromises as to FLSA claims where
> there is a bona fide dispute as to the amount of hours worked or
> compensation due. A release of a party's rights under the FLSA is
> enforceable under such circumstances.

*Martinez*, 361 F. Supp. 2d at 631.  Noting that the Settlement Agreement between Spring Break

Louisiana and the union specifically stated, "disputes remain between the parties as to the

amounts that may be due," the Louisiana district court held:

> [J]ust as the court in *Martinez* concluded that a bona fide dispute
> existed because the employer and employee disagreed over the
> amount of unpaid wages owed to the employee, here, a bona fide

dispute existed at the time of the Settlement Agreement because Plaintiffs and Spring Break Louisiana disagreed over whether Plaintiffs had worked the days for which they claimed unpaid wages. Accordingly, like *Martinez*, where the court held that the private settlement was a valid release of the plaintiff's FLSA rights because a bona fide dispute over the number of hours worked existed, here, the Settlement Agreement relieved Plaintiffs of their FLSA claims in this action because the Settlement Agreement resolved a bona fide dispute over the number of hours Plaintiffs worked.

*Martin*, 797 F. Supp. 2d at 731 (alterations added) (internal citations omitted).

On appeal, the Fifth Circuit essentially adopted the district court's reasoning. Expressly endorsing the rationale set forth in *Martinez* and adopted by the district court, the Fifth Circuit held "that the payment offered to and accepted by [the employees] ... pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves." *Martin*, 688 F.3d at 255 (alterations added). The Court compared the facts in *Martin* to those in *Thomas v. Louisiana*, 534 F.2d 613 (5th Cir. 1976), which upheld a private settlement of FLSA claims that gave employees "everything to which they [were] entitled under the FLSA at the time the agreement is reached." *Thomas*, 534 F.2d at 615 (alterations added). The Court reasoned:

Spring Break Louisiana and the Union agreed in the Settlement Agreement that the payments Appellants were paid pursuant to that agreement were the "amounts due and owing" for the disputed number of hours they claimed they had worked and not been paid for. The Settlement Agreement was a way to resolve a bona fide dispute as to the number of hours worked—not the rate at which Appellants would be paid for those hours—and though Appellants contend they are yet not satisfied, they received agreed-upon compensation for the disputed number of hours worked.

*Martin*, 688 F.3d at 256.

Although the Fifth Circuit distinguished *Lynn's Food Stores* in a footnote, it did not reject or criticize the Eleventh Circuit's analysis. To the contrary, the Court attempted to

reconcile its opinion with the Eleventh Circuit case. Citing to that portion of *Lynn's Food Stores* which opined that "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA," *Lynn's Food Stores*, 679 F.2d at 1354), the Fifth Circuit noted that the settlement in *Martin* had also occurred in the context of a lawsuit. *Martin*, 688 F.3d at 256, n. 10. The Fifth Circuit stated:

> Here ... Appellants were already benefitting from legal counsel before the Settlement Agreement was signed in November 2009. In fact, Appellants knew about their rights under the FLSA and had retained attorneys at least by July 9, 2009, the date that Appellants' attorneys signed their first amended complaint, filed with the Superior Court of California for the County of Los Angeles, for, among other things, "overtime under the FLSA." The money Appellants received and accepted, pursuant to the Settlement Agreement, for settlement of their bona fide dispute did not occur outside the context of a lawsuit, hence the concerns that the Eleventh Circuit expressed in *Lynn's Food Stores* are not implicated.

*Id.* (ellipses added).

### Plaintiff's Arguments for Reconsideration

In arguing for reconsideration in this case, plaintiff interprets *Martin* as holding that "court approval" of FLSA settlements is "not required." Reconsideration Request at 2. Plaintiff's interpretation, however, is an oversimplification of the holding in *Martin*. While the Fifth Circuit approved a private settlement of FLSA claims in *Martin*, that approval was predicated on evidence that "there was a bona fide dispute about time worked" and that the proposed settlement was not "a compromise of guaranteed FLSA substantive rights themselves." *Martin*, 688 F.3d at 255. Moreover, there was evidence that the agreement was reached in the context of a lawsuit in which the employees were represented by counsel. *Id.* at 256, n. 10.

There is nothing to indicate that the Fifth Circuit would have approved a private settlement under other circumstances.

While the settlement in this case was unquestionably reached during a litigation in which the employees were represented by counsel, the parties have not adduced any evidence that their settlement resolves a "bona fide dispute" over hours or rates of pay and does not compromise the non-waivable substantive rights afforded by the FLSA. Without that proof, this Court cannot approve a settlement of the plaintiff's FLSA claims, not even under the relatively liberal standard adopted in *Martin*. Yet, by asking this Court to "so order" a stipulation of discontinuance which provides for dismissing plaintiff's FLSA claims with prejudice, the parties were implicitly asking for such approval. *See Nemaizer v. Baker*, 793 F.2d 58. 60-61 (2d Cir. 1986) (finding that a joint voluntary dismissal of an action with prejudice in federal court pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), which was perfunctorily "so ordered" by the judge, had "the effect of a final adjudication on the merits" and "constitute[d] a final judgment with the preclusive effect of *res judicata*").

In his Reconsideration Request, plaintiff argues that the parties were "not seeking court approval of the FLSA settlement" when they submitted their Stipulation of Dismissal. To the extent plaintiff is implying that the parties can avoid the need to seek judicial approval through their choice of the procedural mechanism for terminating an FLSA action, this Court rejects that position. Permitting form to trump substance in this way would essentially eviscerate the requirement that plaintiffs obtain court approval in order to compromise their FLSA claims. To the extent that plaintiff is arguing that court approval is not required for the parties to voluntarily dismiss an FLSA action without prejudice, this Court declines to address that argument. That issue is not presented by the facts of this case and, therefore, is not before the Court.

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for reconsideration of this Court's memorandum and order dated January 24, 2013, is denied. If the parties wish to dismiss this FLSA action with prejudice, they shall file on or before April 25, 2014, (1) a copy of the Settlement Agreement and (2) a joint memorandum of law explaining why the proposed settlement is fair and should be approved. Otherwise, the parties shall appear before this Court in Courtroom 4B of the Theodore Roosevelt Courthouse on May 12, 2014, at 11:00 a.m.

**SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2014
      Brooklyn, New York